Darren Neilson, USB #15005
Jonathan H. Love, USB #14249
Tyson N. Raymond, USB, #15909
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
DNeilson@parsonsbehle.com
JLove@parsonsbehle.com
TRaymond@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Plaintiff Black Oak Capital BOCA, LLC, a Utah limited liability company, Gregory D. Seare, and bocm3-Paul-Evans-Senior Debt, LLC Plaintiff*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| Black Oak Capital BOCA, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Paul Evans, LLC, a New York limited liability company; Evan Fript, an individual; and DOES 105.,<br><br>Defendant. | **MOTION TO DISMISS COUNTERCLAIM**<br><br>Case No. 2:24-cv-00209-DBB<br><br>Judge David Barlow |
| Evan Fript, an individual; and Paul Evans, LLC, a New York limited liability company,<br><br>Counterclaimant,<br><br>vs.<br><br>Black Oak Capital BOCA, LLC, a Utah limited liability company; Gregory D. Seare, an individual; Kurt Hanson, an individual; and bocm3-Paul Evans-Senior Debt, LLC, a Utah limited liability company,<br><br>Counterclaim Defendants. | |

Black Oak Capital BOCA, LLC, a Utah limited liability company ("**BOCA**"), Gregory D. Seare ("**Seare**"), and bocm3-Paul Evans-Senior Debt, LLC, a Utah limited liability company ("**Lender**") (collectively "**Movants**"), move under FRCP Rule 12(b)(6) to dismiss the Third through the Seventh causes of action found in Paul Evans, LLC, a New York limited liability company, ("**Paul Evans**") and Evan Fript's ("**Fript**") (collectively **Counterclaimants**") *Counterclaims* for the following reasons.

**INTRODUCTION**

"Old grudges die hard."[1] The *Counterclaim* read just like an old grudge—one that has long passed the statue of limitations and airs grievances that were self-induced by their own admitted failure to abide by the applicable agreements. Because of this, the Court should dismiss the *Counterclaim's* Causes of Actions Three through Seven for the following reasons.

First, the *Counterclaim* is barred by the applicable statutes of limitation. Second, the fraudulent inducement and civil conspiracy claims are barred by the economic loss doctrine and fail to comply with Rule 9's particularity pleading requirements. In fact, all of Counterclaimants' claims for fraud and civil conspiracy are based on allegations that Movants failed to perform under the agreements. Third, Counterclaimants fail to bring a breach of contract claim as they have admitted they were in default of the agreement between the parties. Fourth, their claim for unjust enrichment fails as there is an express agreement between the parties. Fifth, their claim under the Voidable Transactions Act fails as they fail to properly allege how they have a "claim" against Movants, fail to outline the particularity of the alleged fraud, and fail to sufficiently allege that Movants are concealing the assets. Lastly, with Counterclaimants failing to state a claim against Lender and Seare, they should be dismissed. Accordingly, the Court should grant the Motion and

[1] *In re Hafen*, 616 B.R. 570, 572 (10th Cir. B.A.P. 2020).

dismiss the *Counterclaim's* Third through Seventh Causes of Actions and dismiss Seare and Lender from the case.

**FACTS**

Counterclaimants bring seven causes of action against Movants. *See generally Counterclaim* (Dkt No. 23). Specific to the Third through Seventh Causes of Action, they allege that Lender was to provide funding to Paul Evans in "multiple tranches." *Id.* at ¶¶ 13. The "Senior Credit Agreement" referenced in this paragraph is attached as **Exhibit A** ("**Loan Agreement**"). The Loan Agreement stated that Lender would lend Paul Evans "up to $3,250,000." **Exhibit A**, recitals. The total amount owed by Paul Evans was to mature on December 21, 2020 (*see* **Exhibit A**, § 1.1, "Note Maturity Date", which "means the third anniversary of the Initial Closing Date (which was December 21, 2017 (*see* "Note" attached as **Exhibit B**)). The terms outlining the amounts and dates the other "tranches" of money would loan is in the Loan Agreement § 2.1. The Loan Agreement states that the "Second Loan" would be issued on February 28, 2018, and the "Third Loan" on June 30, 2018.

Counterclaimants allege that Movants had hatched a plan to lend the first set of money as outlined in § 2.1 but knew they would not provide the additional "tranches" of money as outlined in that same paragraph in order to enable Movants to acquire Paul Evans at below-market prices. *Counterclaim*, ¶¶ 14–23. Counterclaimants allege that "after Frip was fraudulently induced into signing [the Loan Agreement] and Paul Evans, LLC was provided an initial round of funding, Seare announced he would be winding down Black Oak Capital Partners, and there would be no more fund4 [sic] distributions." *Id.* at ¶ 18.

Counterclaimants then allege some elaborate scheme that Seare disappeared so that Senior Debt Company "would not comply with its obligations under the agreements into which it entered

with Paul Evans, LLC, including but not limited to failure to pay subsequent tranches of funding" and that the "assertion that Seare had unexpectedly absconded was simply an excuse to avoid the company's obligations to Paul Evans, LLC." *Id.* at ¶¶ 19–20.

Counterclaimants allege that without the additional "tranches" of funding, Paul Evans was unable to meet its obligations. *Id.* at ¶¶ 22–23. Counterclaimants allege: "Pursuant to ***the agreements*** with Lender…Paul Evans, LLC ***voluntarily*** surrendered effectively all its assets via foreclosure and permit[sic] Lender to take possession." *Id.* at ¶ 24 (emphasis added). This agreement of voluntary surrender is attached as **Exhibit C** ("**Surrender Agreement**"), which was executed on August 25, 2021. Therein, Counterclaimants admitted that they "are in default of performance and payment obligations [] under the Loan Documents" and owed "at least $ 3,601,523.00 as of August 18, 2021." **Exhibit C,** p. 1. It additionally states that Counterclaimants "are in default on the Loan Documents and the Obligations, and [Counterclaimants] hereby acknowledge said default…" *Id.* at p.2. It further states that each party either was represented by counsel or "expressly declined to do so of their own accord" and that "any and all other statements, agreements or representations made prior to or contemporaneously herewith have been merged herein." *Id.*

## LEGAL STANDARD

In a 12(b)(6) motion, the Court accepts "all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Board of County Com'rs of County of Arapahoe, Colo.*, 633 F..3d 1022, 1025 (10th Cir. 2011). "To survive a 12(b)(6) motion to dismiss, a plaintiff must allege that enough factual matter, taken as true, makes his claim to relief plausible on its face." *Id.* (internal quotations and citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). "Legal conclusions, deductions, and opinions couched as facts are, however, not given such a presumption." *Caprin v. Simon Transp. Services*, 112 F.Supp.2d 1251, 1255 (D. Utah 2000).

"A district court may consider a document outside the four corners of a complaint in deciding a Rule 12(b)(6) motion if the document is (1) central to the plaintiff's claim, (2) referred to in the complaint, and (3) free of any genuine dispute over its authenticity." *Tufaro v. Oklahoma ex rel. Board of Regents of University of Oklahoma*,107 F.4th 1121, 1131 (10th Cir. 2024). Additionally, the affirmative defense that the statute of limitations bars the causes of actions may be raised and addressed in a motion to dismiss based upon the facts alleged. *Applied Predictive Tehnologies, Inc. v. MarketDial, Inc.*, 598 F.Supp.3d 1264, 1290 (D. Utah 2022).

## ANALYSIS

### I. Counterclaimants' Claims Are Barred by the Statute of Limitations

#### A. Counterclaimants Fraudulent Inducement and Civil Conspiracy Claims Are Barred by the Applicable Statute of Limitations

A claim "for relief on the ground of fraud or mistake" must be brought within three years. U.C.A. §79B-2-305(3). Here, Counterclaimants' cause of action (to the extent it exists) arose and they were on notice of the fraud no later than February 28, 2018, when Lender allegedly failed to provide the second tranche of funding. Counterclaimants' fraud claim must have been brought on or before February 28, 2021. We are three and half years past the date Counterclaimants should have brought their fraud claim. Additionally, Counterclaimants' civil conspiracy claim is barred by the three-year fraud statute of limitations as the civil conspiracy claim is based upon allegations of fraud. *See Rabo Agrifinance, Inc. v. Bliss*, 227 F.Supp.3d 1249, 1252 (D. Utah 2017) ("[T]he three year statute of limitations applies to all common law claims that are grounded in fraud.")

Therefore, the Court should grant the Motion and dismiss Counterclaimants' fraudulent inducement and civil conspiracy claims as they are barred by the three-year statute of limitations.

### B. Counterclaimants Claim for Breach of Contract as Found in Their Third Cause of Action Is Barred by the Applicable Statute of Limitations.

Utah law outlines that a claim for a breach of contract must be brought within six years. U.C.A. § 78B-2-309(1)(b). Here, assuming Lender did breach the agreement, the alleged breach outlined in the Third Cause of Action took place no later than February 28, 2018, when Lender allegedly failed to provide the additional funding as alleged. Thus, Counterclaimants had until February 28, 2024, to bring their Third Cause of Action. They failed to do so, thus, their breach of contract claim outlined in the Third Cause of Action is barred by the statute of limitations.

## II. Counterclaimants Failed to Properly Allege Their Fraudulent Inducement and Civil Conspiracy Claims

### A. Counterclaimants Fraudulent Inducement and Civil Conspiracy Claims Are Barred by the Economic Loss Doctrine

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 18 (internal quotations and citations omitted). "Put differently, the economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Thorp v. Charlwood*¸2021 UT App 118, ¶ 18. (internal quotations and citations omitted).

> A principal reason behind the rule is that when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim. To the contrary, it seems problematic for a court to make a better contract for the parties than the one they negotiated—by importing tort remedies into the deal.

*Id.* (internal quotations and citations omitted).

"[T]he economic loss rule applies when a contract exists between the parties." *HealthBanc International, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12. "When the tort claim and the contract claim overlap…—when the conflict that arises between parties to a contract is regarding the subject matter of that contract—***the contractual relationship controls***, and parties are not permitted to assert actions in tort." *Id.* at ¶ 15 (internal quotations and citations omitted) (emphasis added).

The economic loss doctrine applies to fraudulent inducement claims. *Id.* at ¶ 16. In fact, "there is no fraud exception [to the economic loss doctrine] where the alleged fraudulent inducement arises out the very grounds alleged as a basis for a breach of contract action." *Id.* at ¶ 1. In *HealthBanc,* the Utah Supreme Court examined whether a fraudulent inducement claim was barred by the economic loss doctrine when the party represented that it owned the rights to a specific product and that representation was incorporated into the parties' agreement. *Id.* at ¶¶ 2–4. In holding that fraudulent inducement claims are barred by the economic loss doctrine when the issue complained of is covered by the contract itself, the *HealthBanc* Court stated: "Contract are negotiated first and drafted second. To claim that a promise is independent of a contract simply because it was spoken prior to the formation of a contract would open the door to tort liability for all pre-contractual negotiations that were eventually enshrined in a contract." *Id.* at ¶ 19. That Court further held: "Intentional bad acts are insufficient by themselves to justify an exception to the economic loss rule. If the 'bad acts' (even intentional ones) are covered by a contract, they remain in the realm of contract law. And contract law remains sufficient to 'punish' the breaching party." *Id.* at ¶ 21.

The scenario here is the exact scenario found in *HealthBanc*. The very fraudulent scheme that Counterclaimants allege gave rise to its fraudulent concealment is the exact same factual basis for the Third Cause of Action for breach of contract. The money that they claim Movants failed to give them was based upon the terms of the agreement. The real claim Counterclaimants bring is one based on the agreement, not a fraudulent one. Indeed, the very damages Counterclaimants claim (i.e. loss of the assets) they allege were pursuant to the Loan Agreement and Surrender Agreement. *See Counterclaim*, ¶ 25 ("Pursuant to ***the agreements*** with Lender…Paul Evans, LLC ***voluntarily*** surrendered effectively all its assets via foreclosure and permit[sic] Lender to take possession." (emphasis added)). Similarly, they allege in support of their fraudulent inducement claim: "The assertion that Seare had unexpectedly absconded was simply an excuse ***to avoid the company's obligations*** to Paul Evans, LLC…" *Counterclaim*, ¶ 20 (emphasis added). Thus, all of Counterclaimants' factual and legal allegations for fraudulent inducement are expressly based upon the alleged obligations found in the Loan Agreement and are barred by the economic loss doctrine.

Since Counterclaimants' civil conspiracy claim arises out of the same factual allegations of their fraudulent inducement claim, it is also barred by the economic loss doctrine as their civil conspiracy claim is governed by the parties' agreement. Therefore, the Court should grant the Motion.

**B. Counterclaimants fraudulent inducement and civil conspiracy claims fail to meet the pleading requirement under Rule 9**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP Rule 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud, and [the plaintiff] must set forth the time, place, and contents of the false representation, the identity of the party making the

false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal quotations and citations omitted) (abrogated under different grounds in *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S 262 (2019)); *see also Gaddy v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*¸665 F.Supp.3d 1263, 1281 ("Rule 9(b) generally requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof."). "[A] plaintiff alleging fraud must know what his claim is when he files it." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir. 1992) (overruled on other grounds by *Central Bank v. First Interstate Bank*¸ 511 U.S. 164 (1994)). Indeed, "[t]he purpose of Rule 9(b) is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *Caprin v. Simon Transp. Services*, 112 F.Supp.2d 1251, 1255 (D. Utah 2000)

> The elements of fraudulent inducement are:
>
> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Daines v. Vincent*, 2008 UT 51, ¶ 38.

Here, as highlighted above, Counterclaimants' allegations are, in essence, one of a breach of contract as they allege that Lender agreed to lend them money and Lender failed to perform. Thus, on this basis alone, it fails to state a claim under Rule 9.

As to the allegations that Movants knew that they would not perform under the Loan Agreement prior to entering into the Loan Agreement, Counterclaims do not plead this with

sufficient particularity. When did Movants come up with this plan? Where did Movants come up with this plan? How did they come up with this plan? The vague references to the fact that Movants had "no intention of providing these subsequent tranches of funding" fails to meet the particularity requirements under Rule 9. It simply does not outline the alleged fraud scheme with sufficient particularity. Additionally, Counterclaimants allege "Pursuant to ***the agreements*** with Lender…Paul Evans, LLC ***voluntarily*** surrendered effectively all its assets via foreclosure and permit[sic] Lender to take possession." *Counterclaim*, ¶ 25 (emphasis added). Since Counterclaimants claim this was voluntary and pursuant to the agreements, there is not sufficient basis for fraud.

Because Counterclaimants' civil conspiracy claim is based upon fraud, it also fails to meet the requirements under Rule 9 for the same reasons as the fraudulent inducement claim. Therefore, the Court should dismiss Counterclaimants' claim for fraudulent concealment.

## III. Counterclaimants Failed to Properly Allege a Breach of Contract Claim for Their Third Cause of Action.

"To prove a breach of contract claim, a party must demonstrate its own performance of the contract." *Sum v. Symphony Group, LLC*, 2018 UT App 212, ¶ 23. Based upon Counterclaimants' admission in the Surrender Agreement, Counterclaimants admit that they breached the Loan Agreement. Accordingly, they cannot prove a breach of contract as they admit that Paul Evans failed to perform under the Loan Agreement.

For context, the amount owed in August 2021, almost a year after the maturation date of the Loan Agreement, was at least $3,601,523.00. The maximum amount Lender agreed to lend Paul Evans was $3,250,000. The admitted amount owed almost a year after the debt was to be paid in full alone is sufficient to show that Paul Evans failed to perform, thus, Counterclaimants failed to state an essential element of a breach of contract claim. Counterclaimants further allege their

very damages under the contract were the result of the terms of the Loan Agreement and Surrender Agreement. *See Counterclaim*, ¶ 25 ("Pursuant to ***the agreements*** with Lender…Paul Evans, LLC ***voluntarily*** surrendered effectively all its assets via foreclosure and permit[sic] Lender to take possession.") (emphasis added). Lastly, the terms of the Surrender Agreement expressly merge any alleged breach by Lender into the Surrender Agreement. Since Counterclaimants are not alleging a breach of the Surrender Agreement, they further failed to state a claim for breach of contract against Movants. Therefore, the Court should grant the Motion.

## IV. Counterclaimants Failed to Properly Allege an Unjust Enrichment Claim

An action in unjust enrichment is not an action to enforce a contract "but rather is a legal action in restitution." *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct.App. 1987). Because the unjust enrichment doctrine "is designed to provide an equitable remedy where one does not exist at law[,]… if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment." *American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1193 (Utah 1996) (abrogated on other grounds in *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65).

The parties had multiple express agreements that directly addressed the relationship between the parties with the Surrender Agreement addressing Paul Evans' surrender of its assets. Since all of Counterclaimants' allegations for unjust enrichment derive from Movants obtaining Paul Evans assets and they allege this was all done pursuant to the agreements between Lender and Paul Evans, there can be no claim for unjust enrichment. *See Counterclaim*, ¶ 25 ("Pursuant to ***the agreements*** with Lender…Paul Evans, LLC ***voluntarily*** surrendered effectively all its assets via foreclosure and permit[sic] Lender to take possession.") (emphasis added). Therefore, the Court should grant the Motion.

## V. Counterclaimants Failed to Properly Plead a Voidable Transactions Claim

Counterclaimants make allegations that Movants transferred assets to "hinder, delay, or defraud Paul Evans, LLC." *Counterclaim*, ¶ 70. Since there are allegations of fraud, Rule 9 applies. There are no allegations that outline with particularity how Movants transferred assets with the intent to hinder, delay, or defraud Paul Evans. Rather, Counterclaimants merely recite the elements of a voidable transaction without sufficient allegations, which are not even sufficient under Rule 8's notice pleadings, let alone Rule 9's particularity requirement. It is also unclear how the objective record can sustain an allegation that Movants are concealing assets when BOCA brought a claim against Movants claiming ownership of the assets. If it were Movants' concealing who owned the assets, the last thing they would want to do is bring a lawsuit stating who held title to the assets.

Counterclaimants fail to state a claim under the terms of the Voidable Transfers Act. The Voidable Transfers Act voids transactions "by a debtor." U.C.A. § 25-6-202(1). A debtor "means a person that is liable on a claim." U.C.A. § 25-6-102(6). A claim "means a right to payment." U.C.A. § 25-6-102(3). For the reasons outlined above, Counterclaimants have failed to state a claim against Seare and Lender, thus, they cannot be a "debtor" to which a transaction can be voided.

## VI. Seare and Lender Should Be Dismissed

Given that Counterclaimants' fail to state a claim against Seare and Lender for the reasons outlined above, the Court should grant the Motion and dismiss Seare and Lender from the case.

//

//

//

DATED October 11, 2024.

/s/ Darren Neilson

Darren Neilson
Jonathan H. Love
Tyson Raymond
PARSONS BEHLE & LATIMER

Attorneys for Plaintiff Black Oak Capital BOCA, LLC, a Utah limited liability company, Gregory D. Seare, and bocm3-Paul-Evans-Senior Debt, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2024, I caused to be served a true and correct copy of the foregoing **MOTION TO DISMISS COUNTERCLAIM** via the electronic filing system on the following:

Douglas N. Marsh
CAMBRIDGE LAW, LLC
4610 South Ulster Street Ste. 150
Denver, Colorado 80237
doug@cambridgelaw.com
*Attorneys for Defendants and Counterclaimants*

*/s/ Darren Neilson*