**Matthew B. Crane** (UTB# 13909)
Ford & Crane PLLC
150 W. Commonwealth Ave., #204
Salt Lake City, Utah 84115
Telephone: (801) 753-8002
Email: matthew.crane@fordcranelaw.com
*Attorney for Defendants Evan Fript and Paul Evans, LLC*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLACK OAK CAPITAL BOCA, LLC, a Utah limited liability company,<br><br>Plaintiff,<br>vs.<br><br>PAUL EVANS, LLC, a New York limited liability company, EVAN FRIPT, an individual; and DOES 1-5,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM (PART)**<br><br>Case No. 2:24-cv-00209-DBB<br><br>Judge David Barlow<br><br>[Jury Demanded] |

Defendants, Paul Evans, LLC ("Paul Evans" or the "Company") and Evan Fript ("Fript"), through undersigned counsel, hereby file this memorandum of law in opposition to the Motion to Dismiss (the "Motion to Dismiss", ECF No. 32) causes of action three (3) through seven (7) of Defendants' counterclaim (the "Counterclaim", ECF No. 23) filed by Plaintiff, Black Oak Capital BOCA, LLC ("Black Oak"), Third-party Defendant and argue as follows:

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a

1

legally cognizable claim and the grounds on which it rests.[1] Further, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[2]

"Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."[3] A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'"[4] The plausibility standard requires only that the complaint have enough alleged facts for the court to make a reasonable inference that the defendant is liable for what is alleged in the complaint.[5]

The standard in the Tenth Circuit requires that, in considering a motion to dismiss, a court must accept as true all well-pled facts, and construe all reasonable allegations in the light most favorable to the plaintiff.[6] The Motion to Dismiss includes its own recitation of facts but for the purposes of a motion to dismiss the only relevant facts are those pled by the Counterclaimants. Therefore, the facts recited by Defendant in the Motion to Dismiss are properly ignored. If the facts as set forth in the Complaint are accepted as true and in the light most favorable to the Counterclaimants (as they must be), they clearly state a claim upon which relief should be granted. Thus, the Motion to Dismiss should be denied.

---

[1] *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).
[2] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).
[3] *Twombly* at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[4] *Twombly* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).
[5] *Twombly* at 1949.
[6] *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. Colo. 2008).

# ARGUMENT

## I. COUNTERCLAIMANT'S BREACH OF CONTRACT AND FRAUD-BASED CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

### A. Fraudulent Inducement and Civil Conspiracy (Fifth and Seventh Causes of Action).

A claim "for relief on the ground of fraud or mistake" must be brought within three years, pursuant to U.C.A. § 79B-2-305(3). The Motion to Dismiss erroneously argues that Defendants' causes of action for fraudulent inducement and civil conspiracy arose no later than February 28, 2018—the date when Lender failed to provide the second tranche of funding—because Defendants were on notice of the fraud as of that date. This is not accurate.

As pled in the Counterclaim[7], Counterclaimants did not actually discover the fraudulent scheme when Seare[8] inexplicably returned from his extended absence, immediately following the foreclosure of Paul Evans' assets and the execution of the Surrender Agreement[9] on August 21, 2021. It was only then that Counterclaimants could piece together the elements of the fraud as it became clear to Defendants that Seare's purported resignation, and the claim that the entity was winding down (among others), was engineered to induce Counterclaimants' default under the Loan Agreement[10]. As pled in the Counterclaim, this discovery could not have occurred prior to the execution of the Surrender Agreement on August 21, 2021, at the *very* earliest. The Counterclaim was filed on May 25, 2024, which is within three (3) years of discovering the facts underlying Plaintiff's fraud.

---

[7] ¶ 26.
[8] As defined in the Motion to Dismiss.
[9] Id.
[10] Id.

3

### B. Breach of Contract Claim (Third Cause of Action).

Defendants mischaracterizes breaches of the of the Loan Agreement as if they are a singular event, which occurred on February 28, 2018. Thus, Defendants argue, Counterclaimants' breach of contract claim is barred by the statute of limitations as of February 28, 2024. However, this selective reading is inconsistent with the facts actually pled in the Counterclaim.

The Counterclaim alleges that Defendants' breaches of the Loan Agreement—as well as the implied covenant of good faith and fair dealing inherent in the contract—spanned a period culminating on August 30, 2018, when the third promised loan disbursement was due but never paid by Defendants. Furthermore, as pled in the Counterclaim, Defendants' deliberate acts to deprive Counterclaimants of the fruits of the contract were complete, and finally succeeded on December 21, 2020—when the amounts loaned to Counterclaimants under the Loan Agreement matured, but could not be repaid by Counterclaimants as a direct result of Defendants' actions.

Utah's statute of limitations on a written contract is six (6) years from the date of the breach. Defendant's' series of actions that make up its breach of the Loan Agreement began no earlier than August 30, 2018 (although they continued thereafter), meaning the statute of limitations could not have run on Counterclaimant's breach of contract claims until August 30, 2024 at the *very earliest*. The Counterclaim was filed on May 25, 2024, comfortably within the statutory time limit.

## II. COUNTERCLAIMAINT'S FRAUDULENT INDUCEMENT AND CIVIL CONSPIRACY CLAIMS ARE SUFFICIENTLY PLED.

### A. Counterclaimants' Fraudulent Inducement and Civil Conspiracy Claims Are Not Barred by the Economic Loss Doctrine.

Defendants argue in the Motion to Dismiss that Counterclaimants causes of action for fraudulent inducement and civil conspiracy are barred by the economic loss doctrine because there is a contract between the parties.[11] This argument fails because the Counterclaimants have alleged that Defendants violated duties and committed wrongdoing completely independent of the Loan Agreement.

In Utah, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care under tort law*."[12] The Counterclaim alleges that Counterclaimants relied on the independent legal duty each person has to not make affirmative misstatements, not the duties in the Contract.[13] "Misrepresentation may be made either by affirmative statement *or* by material omission, where there exists a duty to speak"[14] The Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth."[15]

Further, Defendants were under an affirmative duty to disclose basic matters related to the Loan Agreement transaction because Defendants knew Counterclaimants were relying on

---

[11] Motion to Dismiss, p 6 and 7, generally.
[12] KTM Health Care Inc. v. SG Nursing Home LLC, 2018 UT App 152, ¶ 70, 436 P.3d 151 (cleaned up).
[13] *See* Smith v. Frandsen, 2004 UT 55, ¶ 11, 94 P.3d 919; Ennis v. Alder Prot. Holdings, LLC, No. 2:19-CV-00512, 2021 WL 409785, *9 (D. Utah Feb. 5, 2021).
[14] Id.
[15] Ennis, at *9; Basic Inc. v. Levinson, 485 U.S. 224, 240 n. 18 (1988) (noting "the ever-present duty not to mislead") (emphasis added).

false information—i.e. that Defendants had no intention of completing the funding cycle and aimed to corral Counterclaimants into default and foreclosure of Paul Evans' assets. A party must disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts"[16]

For example, "a seller who knows that his cattle are infected with tick fever or contagious abortion is not free to unload them on the buyer and take his money, when he knows that the buyer is unaware of the fact, could not easily discover it, would not dream of entering into the bargain if he knew and is relying upon the seller's good faith and common honesty to disclose any such fact if it is true."[17] As in the example, the allegations in the Counterclaim argue that Counterclaimants would never have dreamed of entering into the Loan Agreement if Defendants had told them that Defendants did not intend to complete the course of funding.

Defendants' duties to be forthcoming and tell the whole truth are duties that exist independent from and outside of the contract between the parties. As such, Counterclaimants' fraud-based claims are not precluded by the economic loss doctrine. If the Court is somehow persuaded that the Counterclaim lacks sufficient fact, Counterclaimants respectfully submit that they should be permitted leave to amend the pleading.

---

[16] First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1330 (Utah 1990) (citing Restatement (Second) of Torts § 551); see also Shree Ganesh, LLC v. Weston Logan, Inc., 2021 UT 21, ¶ 37, 491 P.3d 885 ("[W]here a person makes an affirmative statement, that person has a common-law duty to disclose all material facts necessary to prevent that statement from being misleading.").
[17] Restatement (Second) of Torts § 551, cmt. l (1977).

## B. Counterclaimants' Fraud-Based Claims Are Sufficiently Pled under Rule 9.

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the Counterclaim as true and interpret those facts and all inferences drawn therefrom in the light most favorable to Counterclaimants.[18] A party asserting a claim must only give the defendant fair notice of the nature and basis or grounds of the claim. Given that standard, the Counterclaim meets the pleading requirements of Rule 9.

The Counterclaim specifically alleges that the Defendants represented to the Counterclaimants that they would provide multiple tranches of financing.[19] The Counterclaim further alleges that the representations of future financing were false because the Defendants never intended to provide the later tranches of financing and intentionally misled the Counterclaimants with the intent to force them into foreclosure and acquire their assets at a discount.[20] And that the Counterclaimants reasonably relied on the Defendants future tranches of financing and suffered damages when the financing failed to arrive and the Defendants acquired the Company's equity at below-market prices.[21] These elements are restated in the Counterclaimant's fifth cause of action for fraudulent inducement.[22]

These elements give the Defendants fair notice of the nature and basis or grounds of the claim. Additionally, they provide sufficient details about the claims: The fraud was committed by the Defendants including Seare and Hanson.[23] The misrepresentations involved

---

[18] Oakwood Vill. LLC v. Albertson's, Inc., 2004 UT 101, ¶ 9.
[19] Counterclaim ¶ 13-14.
[20] Id. ¶ 15.
[21] Id. ¶ 16.
[22] Id. ¶¶ 64-69.
[23] Id. ¶ 12.

representations that the Defendants would invest multiple tranches of financing into the company allowing it to expand.[24] The representations were initially made in conversations between Fript and Seare in 2017-18 prior to parties consummating a written agreement[25] and continued as the Defendants made strategic decisions to expand in reliance on additional financing. If the Court is somehow persuaded that the Counterclaim lacks sufficient fact, Counterclaimants respectfully submit that they should be permitted leave to amend the pleading.

### III. COUNTERCLAIMANT'S BREACH OF CONTRACT CLAIMS ARE NOT BARRED BY THE SURRENDER AGREEMENT.

Defendants argue that Counterclaimants' breach of contract fails because Counterclaimants admitted that they did not perform under the Loan Agreement when they executed the Surrender Agreement. Thus, Defendants argue, Counterclaimants cannot establish a key element of breach of contract—that they performed under the contract.

This argument seeks to ignore a central factual allegation of the Counterclaim: That the Defendants breached the agreement between the parties first. As clearly pled in the Counterclaim, Defendants first breached the contract by not disbursing the second round of financing, as agreed, on February 28, 2018.[26] This failure was the first of several in a series of breaches designed to force Counterclaimants into default. Defendants disbursed the first round of funds, fully understanding that Counterclaimants would deploy that money to expand operations (as they had discussed prior to executing the Loan Agreement), and that failure to make future

---

[24] Id. ¶¶ 13-14, 65.
[25] Answer ¶ 2.
[26] Counterclaim ¶¶ 15-16.

8

disbursements would render them utterly unable to repay the principal.[27] On its face, the Counterclaim states that Counterclaimants' inability to perform under the contract was induced—if not outright forced—by Defendants' own prior breach.

Furthermore, at the time Defendants' series of breaches commenced on February 28, 2018, Counterclaimants had performed each and every one of their obligations under the contract.[28] Counterclaimants' acknowledgement in the Surrender Agreement that they were later unable to perform under the Loan Agreement does not disturb the fact that they were in good standing under the contract when the facts supporting their breach of contract claim occurred.

Accordingly, the facts of the Counterclaim, which must be accepted as true on a motion to dismiss, establish that Counterclaimants performed their obligations under the contract until the Defendant's materially breached the parties' agreement by failing to provide financing. If the Court is somehow persuaded that more factual support is needed, Counterclaimants respectfully request leave to amend the Counterclaim.

### IV. UNJUST ENRICHMENT CLAIM SHOULD NOT BE DISMISSED.

Counterclaimants bring their unjust enrichment claim as an *alternative* to the claims based in contract. In the event Counterclaimants prevail on their causes of action for fraudulent inducement and civil conspiracy, and successfully void the contracts procured by said fraud, their path to recovering their assets and damages runs through unjust enrichment.

The Counterclaim clearly alleges that the Counterclaimants have conferred benefits upon Defendant which would be unjust for Defendant to retain without compensating

---

[27] Id.
[28] Id. ¶ 56.

Counterclaimants for their value.[29] On its face, the Counterclaim satisfies all the elements of an unjust enrichment claim sufficient to survive a motion to dismiss under Rule 12(b)(6).

## V. VOIDABLE TRANSACTIONS CLAIM SHOULD NOT BE DIMISSED.

Defendants argue that Counterclaimants sixth cause of action for voidable transactions should be dismissed because there are allegations of fraud that have not been pled with particularity as required by Rule 9. However, Counterclaimants have pled details sufficient to put the parties on fair notice of this claim and survive a motion to dismiss.

In particular Counterclaimants have alleged that Defendants have transferred the assets of the Company to Seare or substantially in his control without equivalent value leaving the Lender insolvent.[30] This is especially troubling since Counterclaimants have also previously alleged that Seare unexpectedly disappeared and resigned from the Black Oak Capital Partners as an pretense to avoid obligations to Counterclaimants at the time that he announced no more tranches of funding would be issued[31] and the Defendants have failed to show any documentation of how Defendants acquired that assets of the Lender or became the Lender's successor-in-interest as alleged in the Complaint.

Because more specific details of this alleged fraud depend on documents in the possession of the Defendants, Counterclaimants have alleged facts that, if true, would support this claim. If the Court is somehow persuaded that more factual support is needed, Counterclaimants respectfully request leave to amend the Counterclaim or reserve the right to

---

[29] Counterclaim ¶¶ 60, 63.
[30] Counterclaim ¶¶ 70-76.
[31] Counterclaim ¶¶ 18-22.

bring a future voidable transactions claim if discovery reveals additional facts supporting such a claim.

## CONCLUSION

The only facts that matter in considering a motion to dismiss pursuant to Utah Rule 12(b)(6) are those plead in the Counterclaim. Accordingly, the recitation of facts in the Motion to Dismiss is properly ignored. In considering a motion to dismiss, the Court should accept the factual allegations of the Counterclaim as true, and construe them in the light most favorable to Counterclaimants.

When viewed through that lens, the Counterclaim sets forth sufficient facts to put Defendants on notice as to the general nature of Counterclaimants' claims, and meets the elements of each of the causes of action. If the Court is somehow persuaded that more factual support is needed, Counterclaimants respectfully ask the Court for leave to amend the Counterclaim.

DATED this 15th day of November, 2024.

FORD & CRANE PLLC

/s/ Matthew B. Crane
Matthew B. Crane (UTB# 31909)
*Attorney for Defendants Evan Fript and Paul Evans, LLC*

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on the 15th day of November, 2024, I caused a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM (PART) to be filed with the Court electronically via Greenfiling, which caused notice to be served upon all parties through their e-filing counsel of record via the Court's Notice of Electronic Filing [NEF].

/s/ Matthew B. Crane