Darren Neilson, USB #15005
Jonathan H. Love, USB #14249
Tyson N. Raymond, USB, #15909
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
DNeilson@parsonsbehle.com
JLove@parsonsbehle.com
TRaymond@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Plaintiff Black Oak Capital BOCA, LLC, a Utah limited liability company, Gregory D. Seare, and bocm3-Paul-Evans-Senior Debt, LLC Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Black Oak Capital BOCA, LLC, a Utah limited liability company, <br><br>Plaintiff, <br><br>vs. <br><br>Paul Evans, LLC, a New York limited liability company; Evan Fript, an individual; and DOES 105., <br><br>Defendant. | **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS** <br><br>Case No. 2:24-cv-00209-DBB <br><br>Judge David Barlow |
| Evan Fript, an individual; and Paul Evans, LLC, a New York limited liability company, <br><br>Counterclaimant, <br><br>vs. <br><br>Black Oak Capital BOCA, LLC, a Utah limited liability company; Gregory D. Seare, an individual; Kurt Hanson, an individual; and bocm3-Paul-Evans-Senior Debt, LLC, a Utah limited liability company, <br><br>Counterclaim Defendants. | |

Black Oak Capital BOCA, LLC, a Utah limited liability company ("**BOCA**"), Gregory D. Seare ("**Seare**"), and bocm3-Paul Evans-Senior Debt, LLC, a Utah limited liability company ("**Lender**") (collectively "**Movants**"), hereby files their Reply Memorandum Supporting Motion to Dismiss in response to Paul Evans, LLC, a New York limited liability company, ("**Paul Evans**") and Evan Fript's ("**Fript**") (collectively **Counterclaimants**") Memorandum in Opposition to Motion to Dismiss Counterclaim (Part) (the "**Opposition**").

## NEW MATTERS RAISED IN OPPOSITION

Counterclaimants make several arguments and citations of fact not raised in the Motion. First, that the fraud-based claims were not discovered until the execution of the Surrender Agreement so that the statute of limitations did not start running until then. Second, that the breach of contract did not occur until August 30, 2018, at the very earliest so that the statute of limitations did not start running until then. Third, that the fraudulent inducement and civil conspiracy claims are not barred by the economic loss doctrine. Fourth, that the fraud claims are pled with sufficient particularity. Fifth, that the breach of contract claims are not barred by the Surrender Agreement. Sixth, that the unjust enrichment claim, pled in the alternative, should not be dismissed as it is the only way for Counterclaimants to recover assets should the fraud-based claims succeed. Seventh, that the voidable transaction claim is pled with sufficient particularity. None of these new issues provide an adequate basis to avoid dismissal of Counterclaimants' claims.

## ANALYSIS

I. **Counterclaimants' Claims Are Barred by the Statute of Limitations**

   A. **Counterclaimants Fraudulent Inducement and Civil Conspiracy Claims Are Barred by the Applicable Statute of Limitations**

Counterclaimants' Opposition claims that they did not "discover" the alleged "fraudulent scheme" until August 21, 2021. But Counterclaimants do not outline any facts alleged in the

2

*Counterclaim* that would justify the delay in discovery until three years after Lender allegedly failed to provide the second tranche of funding. Under their facts and theory, they were on notice of the alleged fraud at the time they did not receive their additional "tranche" of funds. Therefore, the Court should grant the Motion and dismiss Counterclaimants' fraudulent inducement and civil conspiracy claims as they are barred by the three-year statute of limitations.

### B. Counterclaimants Claim for Breach of Contract as Found in Their Third Cause of Action Is Barred by the Applicable Statute of Limitations.

As to their Third Cause of Action, Counterclaimants take the convenient stance that the breach of contract, if one occurred, took place on August 30, 2018, when Lender allegedly failed to provide the third round of funding. Alternatively, they argue that the breach of contract did not occur until Movant's "deliberate acts to deprive Counterclaimants of the fruits of the contract were complete, and finally succeeded on December 21, 2020, when the loans had matured and could not be repaid by Counterclaimants. Opposition at 4. But their arguments fall flat.

"As a general rule, a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action. ***Once a statute has begun to run***, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred." *Russell Packard Development, Inc. v. Carson*, 2005 UT 14, ¶ 20 (cleaned up) (emphasis added). Counterclaimants admit that all the elements of a breach of contract accrued on February 28, 2018. Counterclaimants could have filed a suit under their alleged facts on March 1, 2018, which means that the statute of limitations began running on February 28, 2018. *See* Opposition at 8. The case law cited above demonstrates that under Utah law, the statute of limitations begins to accrue the moment all of the elements are met and once the statute has begun to run, the claims must be brought before the limitations period expires. As such, their cause of action for breach of contract accrued on February 28, 2018, and that is when the statute of limitations began to run. They failed

3

to bring their breach of contract claim within the six-year statute of limitations once the breach occurred.

Counterclaimants argue that the statute of limitations did not begin to run until December 21, 2020 as that is when the parties entered into a Surrender Agreement. Again, this is inconsistent with Utah law. "In a breach of contract action the statute of limitations ordinarily begins to run when the breach occurs." *Butcher v. Gilroy,* 744 P.2d 311, 313 (Utah Ct. App. 1987). The fact that there was a Surrender Agreement after the initial alleged breach does not renew the statute of limitations. Counterclaimants provide no basis in law or logic to toll or renew the statute of limitations at the time of the Surrender Agreement. Thus, under U.C.A. § 78B–2–309(1)(b), Counterclaimants had until February 28, 2024, to bring their Third Cause of Action. They failed to do so, thus, their breach of contract claim outlined in the Third Cause of Action is barred by the statute of limitations.

## II. Counterclaimants Failed to Properly Allege Their Fraudulent Inducement and Civil Conspiracy Claims

### A. Counterclaimants Fraudulent Inducement and Civil Conspiracy Claims Are Barred by the Economic Loss Doctrine

Contrary to Counterclaimants' position, the economic loss doctrine as defined by Utah law applies in the case at bar to proscribe Plaintiffs' efforts to create tort liability for claims governed by contract. The "independent duties" which Movant's allegedly breached, that Counterclaimants rely on in its fraud and civil conspiracy claims, have previously been found by Utah law to be "quintessential breach of contract allegations."

In *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, the Court of Appeals affirmed the dismissal of tort claims under the economic loss rule. There, a pharmacy sued a nursing home under theories of breach of contract and tort. *Id.* at ¶ 77. The Court reasoned:

> Pharmacy's tort claims all contain similar allegations: that Nursing Home "represented to [Pharmacy] that [it] had the ability to comply and perform in accordance with the terms" of the parties' contract, that it "would comply and perform in accordance with the terms" of the parties' contract, and that those representations were false because Nursing Home never intended to honor the contract and instead was simply using its contractual negotiations with Pharmacy to leverage a better deal with its existing provider. It is evident, however, that these allegations amount to ***nothing more than an assertion that Nursing Home promised that it could and would comply with the terms of the parties' contract, and that it broke those promises.*** These are quintessential breach of contract allegations, and they do not materially differ from the allegations Pharmacy makes to support its claim for breach of contract.
>
> Notably, Pharmacy does not allege that Nursing Home made any other false representations—***other than that it would comply with the terms of the contract***—that were specifically intended to induce Pharmacy to enter into the contract. *See Huron Tool and Eng'g Co. v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541, 546 (1995) (dismissing plaintiff's fraud in the inducement claim because "plaintiff's allegations of fraud are not extraneous to the contractual dispute"). This case is therefore materially indistinguishable from *Grynberg*, where our supreme court concluded that "[t]he fact that the exact same conduct is described in both the contract and tort claims, and the exact same facts and circumstances are at play, is indicative of the overlapping duties in this case." 2003 UT 8, ¶ 53, 70 P.3d 1. In *Grynberg*, the supreme court affirmed a trial court's dismissal of a plaintiff's tort claims under the economic loss rule under such circumstances, and we are compelled to do the same in this case.

*Id.* at ¶¶ 78-79, 172–73 (emphasis added).

Here, Counterclaimants' claims for fraud and civil conspiracy fail for the same reasons outlined in *KTM Health Care* and *Grynberg*. As in *KTM Health Care*, Counterclaimants allege that Movants represented that it would fulfill the terms of the Loan Agreement and that those representations were false because it never intended to do so. As was the case in *KTM Health Care*, Counterclaimants do not allege that Movants made any other false representations—other than they would comply with the terms of the contract—that were specifically intended to induce

5

Counterclaimants to enter into the contract. As such, this Court should follow the holdings in *KTM Health Care* and *Grynberg* and dismiss Counterclaimants' causes of action for fraud and civil conspiracy due to the economic loss rule.

Since Counterclaimants' civil conspiracy claim arises out of the same factual allegations of their fraudulent inducement claim, it is also barred by the economic loss doctrine as their civil conspiracy claim is governed by the parties' agreement. Therefore, the Court should grant the Motion.

**B. Counterclaimants fraudulent inducement and civil conspiracy claims fail to meet the pleading requirement under Rule 9**

Counterclaimants still fail to meet the pleading requirements under Rule 9 for its claims for fraudulent inducement and civil conspiracy. As stated above, Counterclaimants' allegations are, in essence, one of a breach of contract as they allege that Lender agreed to lend them money and Lender failed to perform. Counterclaimants' efforts to overcome the economic loss rule do not negate this point. Thus, on this basis alone, it fails to state a claim under Rule 9.

As to the allegations cited by Counterclaimants in their Opposition, they are nothing more than vague allegations that restate the elements of fraud and fail to give fair notice of the nature and basis or grounds of the claim. The vague references to the fact that Movants had "no intention of providing these subsequent tranches of funding" fails to meet the particularity requirements under Rule 9. It simply does not outline the alleged fraud scheme with sufficient particularity.

Because Counterclaimants' civil conspiracy claim is based upon fraud, it also fails to meet the requirements under Rule 9 for the same reasons as the fraudulent inducement claim. Counterclaimants make no effort to support its civil conspiracy claim is pled with particularity. Therefore, the Court should dismiss Counterclaimants' claim for fraudulent concealment.

4897-4319-5905.v1

### III. Counterclaimants Failed to Properly Allege a Breach of Contract Claim for Their Third Cause of Action.

While Counterclaimants maintain that Movants were still in breach of the Loan Agreement, they do nothing to negate their admission of breach in the Surrender Agreement. "To prove a breach of contract claim, a party must demonstrate its own performance of the contract." *Sum v. Symphony Group, LLC*, 2018 UT App 212, ¶ 23. Based upon Counterclaimants' admission in the Surrender Agreement, Counterclaimants admit that they breached the Loan Agreement. Accordingly, they cannot prove a breach of contract as they admit that Paul Evans failed to perform under the Loan Agreement.

### IV. Counterclaimants Failed to Properly Allege an Unjust Enrichment Claim

Counterclaimant clarifies that its unjust enrichment claim is brought in the alternative if they were to prevail on their causes of action for fraudulent inducement and civil conspiracy. As stated above, the claims for fraudulent inducement and civil conspiracy are for breaches of obligations identical to Movant's contractual obligations, and thus fail as a matter of law. Furthermore, Counterclaimants do not allege other enforceability issues that would render the various agreements unenforceable. Thus, the claim for unjust enrichment claim should be dismissed.

### V. Counterclaimants Failed to Properly Plead a Voidable Transactions Claim

Counterclaimants still fail to direct the Court to allegations that outline with particularity how Movants transferred assets with the intent to hinder, delay, or defraud Paul Evans. For instance, Counterclaimants allege that Movants transferred assets of the Company to Seare without equivalent value, leaving the Lender insolvent. Opposition at 10, Counterclaim ¶¶ 70-76. Instead of evidence of intent, Counterclaimants make vague reference to their suspected elaborate plan

4897-4319-5905.v1

that Movants allegedly had concocted to defraud Counterclaimants. *Id.* This is nothing more than pure speculation and does nothing to satisfy the requirements of Rule 9.

Furthermore, Counterclaimants admit their lack of particularity when they acknowledge that they lack specific details of the alleged fraud and would need discovery of additional documentation in order to maintain their claims. This Court should not preserve Counterclaimants' claim for voidable transactions to assist Counterclaimants' fishing-expedition-discovery on facts that they speculate would sustain their claims.

Finally, Counterclaimants have failed to state a claim against Seare and Lender, thus, they cannot be a "debtor" to which a transaction can be voided. As such, Movants' motion should be granted.

**VI.  Seare and Lender Should Be Dismissed**

Given that Counterclaimants' fail to state a claim against Seare and Lender for the reasons outlined above and in Movants' Motion, the Court should grant the Motion and dismiss Seare and Lender from the case.

DATED November 26, 2024.

    /s/ Tyson N. Raymond
Darren Neilson
Jonathan H. Love
Tyson N. Raymond
PARSONS BEHLE & LATIMER

Attorneys for Plaintiff Black Oak Capital BOCA, LLC, a Utah limited liability company, Gregory D. Seare, and bocm3-Paul-Evans-Senior Debt, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I caused to be served a true and correct copy of the foregoing **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS** via the electronic filing system on the following:

Matthew B. Crane
FORD & CRANE PLLC
150 W. Commonwealth Ave., #204
Salt Lake City, Utah 84115
matthew.crane@fordcranelaw.com
*Attorney for Defendants Evan Fript and Paul Evans, LLC*

　　　　　　　　　　　　　　　　　　　　　*/s/ Tyson N. Raymond*