THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| EVAN FRIPT and PAUL EVANS, LLC,<br><br>    Counterclaimants,<br><br>v.<br><br>BLACK OAK CAPITAL BOCA, LLC;<br>GREGORY D. SEARE; KURT HANSON,<br>and bocm3-Paul Evans-Senior Debt, LLC,<br><br>    Counterclaim Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [ECF NO. 32] COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00209<br><br>District Judge David Barlow |

Before the court is Black Oak Capital BOCA, LLC ("BOCA"), Gregory D. Seare ("Mr. Seare"), Kurt Hanson ("Mr. Hanson"), and bocm3-Paul Evans-Senior Debt, LLC's ("Lender") (collectively "Counterclaim Defendants") motion to partially dismiss Evan Fript ("Mr. Fript") and Paul Evans, LLC's ("Paul Evans") (together "Counterclaimants") counterclaim. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

This dispute arises from a credit agreement between Lender and Paul Evans, an online footwear seller.[1] Mr. Fript was a member and manager of Paul Evans.[2] Lender is owned by Black Oak, a private equity firm operated by Mr. Seare and Mr. Hanson.[3]

---

[1] Defendants' Amended Answer and Counterclaims ("Counterclaim") ¶ 9–11, ECF No. 23, filed Nov. 5, 2024. The court accepts Counterclaimants well-pleaded facts as true and views them in the light most favorable to them at this stage. *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).
[2] *Id.* at ¶ 9.
[3] *Id.* at ¶ 11–12.

On December 21, 2017, Counterclaimants and Lender entered into a Senior Credit Agreement (the "Loan Agreement"), wherein Lender agreed to loan Paul Evans $3,250,000 and Counterclaimants pledged their assets as collateral.[4] Counterclaimants allege that Lender agreed to provide Paul Evans with additional funding in multiple tranches after the initial payment.[5] However, Counterclaimants allege that Lender never intended to provide the full amount.[6] Counterclaimants allege that Lender, Mr. Seare, and Mr. Hanson induced Paul Evans to accept the first tranche of funding, after which they intended to claim that subsequent tranches would not be available, in an effort to force Paul Evans into default and allow Lender to foreclose on Paul Evans's assets.[7]

In September 2022, Mr. Fript was informed that Mr. Seare had resigned from Black Oak Capital Management and Lender would not comply with its obligations under the Agreement.[8] Counterclaimants allege that as a result, Paul Evans was left without the funding it needed to continue its business and fulfill its repayment obligations under the Agreement.[9] At some point thereafter, Paul Evans surrendered its assets to Lender.[10] Counterclaimants allege that the Paul Evans assets have since been transferred to another entity under the control of Mr. Seare.[11]

Mr. Fript then entered into an verbal agreement with Lender (the "Management Agreement") whereby he would continue to operate the Paul Evans assets, including the

---

[4] *Id.* at ¶ 10; pg. 2.
[5] *Id.* at ¶ 13.
[6] *Id.* at ¶ 13–14.
[7] *Id.* at ¶ 15.
[8] *Id.* at ¶ 19.
[9] *Id.* at ¶ 21–22.
[10] *Id.* at ¶ 24.
[11] *Id.* at ¶¶ 44, 71.

company's website.[12] Counterclaimants allege that Mr. Fript was promised $250,000 per year for these services and that he has not been paid as promised.[13] Counterclaimants further allege that Mr. Fript has made personal contributions to Paul Evans to keep it operating, but that he has not been reimbursed.[14]

Black Oak Capital BOCA, LLC, brought claims against Paul Evans, Mr. Fript, and five unnamed Doe defendants on March 19, 2024, alleging they had breached the terms of the Loan Agreement among other claims.[15] On September 5, 2024, Paul Evans and Mr. Fript filed their counterclaim against BOCA, Lender, Mr. Seare, and Mr. Hanson.[16] Counterclaim Defendants filed their motion to dismiss five of Counterclaimant's seven causes of action on October 11, 2024.[17] Counterclaimants filed their opposition to the motion on November 15, 2024,[18] and Counterclaim Defendants replied on November 26, 2024.[19]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[20] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as

---

[12] *Id.* at ¶ 28, pg. 7.
[13] *Id.* at ¶ 28–31.
[14] *Id.* at ¶ 32–33.
[15] Complaint, ECF No. 1, filed Mar. 19, 2024.
[16] Counterclaim 1.
[17] Motion to Dismiss Counterclaim ("Mot."), ECF No. 32, filed Oct. 11, 2024.
[18] Memorandum in Opposition to Motion to Dismiss Counterclaim ("Opp."), ECF No. 40, filed Nov. 15, 2024.
[19] Reply Memorandum Supporting Motion to Dismiss ("Reply"), ECF No. 41, filed Nov. 26, 2024.
[20] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[21]

However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[22] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[23] "When analyzing plausibility, plaintiff's allegations are 'read in the context of the entire complaint' and a plaintiff need only 'nudge' their claim 'across the line from conceivable to plausible.'"[24]

## DISCUSSION

Counterclaim Defendants argue that Counterclaimants' causes of action for breach of the Lending Agreements, unjust enrichment, fraudulent inducement, voidable transactions, and civil conspiracy should be dismissed. The court first addresses the economic loss and statute of limitations arguments, then turns to the remaining claims.

### I.    Economic Loss Doctrine

Counterclaim Defendants argue that Counterclaimants' fraudulent inducement and civil conspiracy claims should be dismissed because they are barred by the economic loss rule. Where a party's tort claim "is a mere duplication of its breach of contract claim" the economic loss rule

---

[21] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[22] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[24] *Greer*, 83 F.4th at 1292 (quoting *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022)) (also quoting *Twombly*, 550 U.S. at 570) (cleaned up).

applies and the "tort claim is barred."[25] "[T]o determine whether the economic loss rule bars a cause of action sounding in tort, [courts] focus on the nature of the duties existing between the parties, and specifically on whether the duties existing between the parties arise as a result of the parties' contract or arise from non-contractual sources. If the tort alleges a breach of duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies."[26]

Counterclaimants argue that the rule does not apply to their fraudulent inducement claim because Counterclaim Defendants had the independent duty "to not make affirmative misstatements."[27] But intentional bad acts "are insufficient by themselves to justify an exception to the economic loss rule" because "contract law remains sufficient to 'punish' the breaching party."[28] Allegations that a party committed fraud because they "never intended to honor the contract" are "quintessential breach of contract allegations" and are barred by the economic loss rule.[29]

To support their independent duty argument, Counterclaimants cite *Ennis v. Alder Protection Holdings, LLC*, where another court in this district predicted that the Utah Supreme Court would hold that "a fraudulent inducement exception to the economic loss rule exists under Utah law."[30] There, the court found that plaintiffs had adequately alleged an independent duty because the misrepresentations they relied on in entering the contracts were not stated in the

---

[25] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 10, 435 P.3d 193, 196.
[26] *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 71, 436 P.3d 151, 170 (citing *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 27, 221 P.3d 234) (also citing *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 52, 70 P.3d 1).
[27] Opp. 5.
[28] *HealthBanc Int'l, LLC*, 435 P.3d at 197.
[29] *KTM Health Care Inc.*, 436 P.3d at 172.
[30] *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-00512, 2021 WL 409785, at *8 (D. Utah 2021).

contracts themselves.[31] The court reasoned that a duty to speak the truth "is independent of the promises already included in the contract unless the express promise is included in the contract itself" and denied the defendant's motion to dismiss based on the economic loss rule.[32]

Unlike in *Ennis*, Counterclaimants have not alleged any misrepresentation that they relied on independent of the contracts themselves. The allegedly fraudulent statement that Lender would provide the additional tranches of funding is in the Loan Agreement, which states that Lender would provide the second and third loans.[33] Accordingly, the fraudulent inducement claim is entirely duplicative of Counterclaimants' claim for breach of the Loan Agreement and must be dismissed.[34]

Counterclaimants' civil conspiracy claim also fails to allege a duty that Counterclaim Defendants had independent of the contracts. A party's duty not to conspire to breach a contract stems from the contract itself; therefore, the economic loss rule applies to this claim.[35] Counterclaimants' conspiracy claim is wholly duplicative of their contract claims, essentially alleging that Lender, Seare, Hansen, and BOCA conspired to breach the contract. Accordingly, the civil conspiracy claim is barred by the economic loss rule and must be dismissed.

---

[31] *Id.*

[32] *Id.* at *11.

[33] Counterclaim ¶ 14–16.

[34] *See Preventive Energy Sols., L.L.C. v. nCap Ventures 5, L.L.C.*, No. 21-4099, 2023 WL 7148434, at *10 (10th Cir. 2023) (unpublished) (distinguishing *Ennis* where claims which formed the foundation for tort claims were duplicative of contract claims); *McNees v. Ocwen Loan Servicing, LLC*, 853 F. App'x 211, 215 (10th Cir. 2021) ("Because application of the economic loss rule is a question of law, claims that are barred by the economic loss rule may be dismissed under Rule 12(b)(6).") (citing *Donner v. Nicklaus*, 778 F.3d 857, 864, 875 (10th Cir. 2015)).

[35] *See McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Centers-Centerra LLC*, 2021 COA 2, ¶ 76, 486 P.3d 439, 455 (the economic loss rule barred civil conspiracy claims because the "duty not to conspire to breach the contract stemmed solely from the Agreement itself.")

## II.    Statute of Limitations

Counterclaim Defendants next argue that the third cause of action for breach of the Loan Agreement should be dismissed because it was filed outside the relevant statute of limitations. Under Utah law, plaintiffs may bring a claim for breach of contract within six years.[36] Counterclaim Defendants argue that the alleged breach took place no later than February 28, 2018, and Counterclaimants did not file their claim by February 28, 2024.[37] Counterclaimants respond that Counterclaim Defendants first breached the Loan Agreement on February 28, 2018, but that the breach culminated on August 30, 2018, when the third tranche of funding was due.[38]

The court may dismiss a claim on the pleadings based on an affirmative defense, such as the statute of limitations, "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."[39] "Plaintiffs' claims cannot be properly dismissed, therefore, unless they allege facts plainly establishing that their claims have expired and cannot be tolled under Utah law."[40] "Furthermore, a complaint need not anticipate any variety of affirmative defenses, including the statute of limitations, which a defendant must elect to raise."[41]

The counterclaim alleges that Counterclaim Defendants breached the Loan Agreement when Lender failed to deliver the second tranche of funds.[42] In its opposition, Counterclaimants argue that Counterclaim Defendants breached the agreement on August 30, 2018, when the third

---

[36] Utah Code Ann. § 78B-2-309 (1)(b).
[37] Mot. 6.
[38] Opp. 4.
[39] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (citations omitted).
[40] *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (applying Utah law).
[41] *Pierucci v. Pierucci*, 2014 UT App 163, ¶ 16, 331 P.3d 7, 13 (citing *Nunnelly v. First Fed. Bldg. & Loan Ass'n of Ogden*, 107 Utah 347, 154 P.2d 620, 632 (1944)).
[42] Counterclaim ¶ 15.

loan disbursement was due but was not paid, so the breach of contract claim is not time barred.[43]

Counterclaimants then contradict this position, arguing that Counterclaim Defendants "first breached the contract by not disbursing the second round of financing, as agreed, on February 28, 2018."[44]

Taken together, Counterclaimants' cause of action for breach of the Loan Agreement is time barred. Their argument is built on the allegation that Counterclaim Defendants only intended to send the first round of funding; therefore, Counterclaim Defendants must have breached the Loan Agreement when they failed to send the second round of funding. Counterclaimants do not dispute that Counterclaim Defendants missed this payment on February 28, 2018. Counterclaimants did not file their counterclaim until May 28, 2024, more than six years after the missed payment. Accordingly, Counterclaimants' third cause of action for breach of the Loan Agreement is dismissed.

### III. Unjust Enrichment

In their fourth cause of action, Counterclaimants allege that Counterclaim Defendants have been unjustly enriched by Mr. Fript's continuing contributions toward Paul Evans.[45] Counterclaim Defendants argue that this claim fails because the parties had several contracts, so unjust enrichment is not available. Counterclaimants respond that the unjust enrichment claim is brought as an alternative to their contract claims.[46]

---

[43] Opp. 4.
[44] Opp. 8, citing Counterclaim ¶¶ 15-16.
[45] Counterclaim at ¶ 60–63.
[46] Opp. 9.

"A claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."[47] Although a complaint may include claims for relief in the alternative, "where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available."[48]

Counterclaimants' first two causes of action for breach of contract are based on alleged verbal agreements between Mr. Fript and Counterclaim Defendants. Counterclaim Plaintiffs may ultimately show there is an enforceable verbal contract between the parties, or the facts may establish that there is no enforceable agreement.[49] Although Counterclaim Plaintiff cannot ultimately succeed on both the breach of contract and unjust enrichment claims, these claims are adequately pled in the alternative and survive Counterclaim Defendants' motion to dismiss.[50]

## IV.    Voidable Transactions

Counterclaim Defendants next argue that the voidable transaction claim should be dismissed because it fails meet the Rule 9(b) pleading standard and because Counterclaimants are not debtors who may void a transaction.[51] Counterclaimants respond that that they have plead sufficient details to survive a motion to dismiss.

---

[47] *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246, 250 (citing *Jeffs v. Stubbs*, 970 P.2d 1234, 1244–45 (Utah 1998)).
[48] *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 13, 270 P.3d 464, 468–469 (quoting *Selvig v. Blockbuster Enterprises, LC*, 2011 UT 39, ¶ 30, 266 P.3d 691, 698).
[49] *See Hiatt v. Brigham Young Univ.*, 512 F. Supp. 3d 1180, 1188 (D. Utah 2021) (denying motion to dismiss unjust enrichment claim plead in the alternative to breach of implied contract claims); *see also Power Block Coin, L.L.C. v. Song*, 705 F. Supp. 3d 1293, 1308 (D. Utah 2023) ("breach of contract claim does not preclude [plaintiff] from pleading an unjust enrichment claim in the alternative.").
[50] *See* Fed. R. Civ. P. 8 (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").
[51] Mot. 12.

When fraud is alleged, Rule 9 imposes a heightened pleading standard that requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[52] "Thus, Rule 9(b) generally requires a plaintiff 'to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof.'"[53] However, "[t]he federal rules do not require a plaintiff to provide a factual basis for every allegation. Nor must every allegation, taken in isolation, contain all the necessary information. Rather, to avoid dismissal under [Rule 9(b)], plaintiffs need only show that, taken as a whole, a complaint entitles them to relief."[54]

Counterclaim Defendants argue that the voidable transaction claim is insufficiently detailed under Rule 9. "[C]ourts generally apply Rule 9(b)'s requirements to intentional fraudulent transfer claims which turn on the transferor's 'actual intent to hinder, delay or defraud,' but not to constructive fraudulent transfer claims which turn solely on the sufficiency of the consideration and the transferor's financial condition."[55] The voidable transaction claim clearly fits in the first category, as it alleges that Lender transferred assets with actual intent to defraud.[56] Accordingly, the Rule 9(b) pleading standard applies to the voidable transactions claim.

---

[52] Fed. R. Civ. P. 9(b).
[53] *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 665 F.Supp.3d 1263, 1281 (D. Utah 2023) (quoting *Hafen v. Strebeck*, 338 F.Supp.2d 1257, 1263 (D. Utah 2004)).
[54] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173 (10th Cir. 2010); *see also Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023) (complaint satisfied Rule 9(b) requirements because it alleged sufficiently particularized allegations when taken as a whole).
[55] *Wing v. Horn*, No. 2:09-CV-00342, 2009 WL 2843342, at *3 (D. Utah 2009) (collecting cases).
[56] Counterclaim ¶ 70.

Counterclaim Defendants argue that the counterclaim fails to allege how they transferred assets with the intent to hinder, delay, or defraud Paul Evans. But the counterclaim states that Lender transferred the assets it received from Paul Evans to a different entity with the intent to frustrate Paul Evans's efforts to recover those assets.[57] The counterclaim further alleges this was done to shield Lender from liability and that Counterclaimants were harmed by the allegedly fraudulent transfer.[58] In all, these allegations are not so deficient that the claim should be dismissed for failure to comply with Rule 9(b).

Finally, Counterclaim Defendants argue that Counterclaimants cannot bring a claim under Utah's Uniform Voidable Transactions Act (the "UVTA").[59] The UVTA provides rights and remedies for defrauded creditors, and a "business entity abused by a fraudulent scheme qualifies as a defrauded creditor for purposes of the UVTA."[60] Counterclaim Defendants do not argue that Counterclaimants do not qualify as a defrauded creditor or provide any further argument on why the UVTA bars this claim. Therefore, Counterclaim Defendants have failed to carry their burden to demonstrate that Counterclaimants have not stated a voidable transactions claim at this stage.

In sum, Counterclaimant's third cause of action for breach of contract, fifth cause of action for fraudulent inducement, and sixth cause of action for civil conspiracy are dismissed. Counterclaim Defendants' request that Mr. Seare and Lender be dismissed is therefore denied.[61]

---

[57] *Id.*
[58] *Id.* at ¶¶ 74, 77.
[59] Utah Code Ann. § 25-6-203.
[60] *Klein v. Roe*, 76 F.4th 1020, 1029 (10th Cir. 2023) (citing *Klein v. Cornelius*, 786 F.3d 1310, 1316 (10th Cir. 2015)).
[61] Mot. 12.

## ORDER

Counterclaimant's third, fifth, and sixth causes of action are dismissed without prejudice.[62]

Signed March 25, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[62] ECF No. 23.