**Matthew B. Crane** (UTB# 13909)
FORD & CRANE PLLC
150 W. Commonwealth Ave., #204
Salt Lake City, Utah 84115
Telephone: (801) 753-8002
Email: matthew.crane@fordcranelaw.com
*Attorney for Defendants Evan Fript and Paul Evans, LLC*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLACK OAK CAPITAL BOCA, LLC, a Utah limited liability company,<br><br>Plaintiff,<br>vs.<br><br>PAUL EVANS, LLC, a New York limited liability company, EVAN FRIPT, an individual; and DOES 1-5,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM**<br><br>Case No. 2:24-cv-00209-DBB<br><br>Judge David Barlow<br><br>[Jury Demanded] |

Defendants, Paul Evans, LLC ("Paul Evans" or the "Company") and Evan Fript ("Fript"), through undersigned counsel, hereby file this memorandum of law in opposition to the Motion to Dismiss (the "Motion to Dismiss", ECF No. 32) Defendants' Second Amended Counterclaim (the "SACC", ECF No. 43) filed by Plaintiff, Black Oak Capital BOCA, LLC ("Black Oak"), Third-party Defendant Gregory Seare ("Seare") and argue as follows:

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a

1

legally cognizable claim and the grounds on which it rests.[1] Further, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[2]

"Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."[3] A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'"[4] The plausibility standard requires only that the complaint have enough alleged facts for the court to make a reasonable inference that the defendant is liable for what is alleged in the complaint.[5]

The standard in the Tenth Circuit requires that, in considering a motion to dismiss, a court must accept as true all well-pled facts, and construe all reasonable allegations in the light most favorable to the plaintiff.[6] The Motion to Dismiss includes its own recitation of facts but for the purposes of a motion to dismiss the only relevant facts are those pled by the Counterclaimants. Therefore, the facts recited by the Defendant in the Motion to Dismiss are properly ignored. If the facts as set forth in the Complaint are accepted as true and, in the light, most favorable to the Counterclaimants (as they must be), they clearly state a claim upon which relief should be granted. Thus, the Motion to Dismiss should be denied.

---

[1] Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007).
[2] Conley v. Gibson, 355 U.S. 41, 47 (1957).
[3] Twombly at 1965 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).
[4] Twombly (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
[5] Twombly at 1949.
[6] Russell v. United States, 551 F.3d 1174, 1178 (10th Cir. Colo. 2008).

# ARGUMENT

## I.  LEAVE TO AMEND COUNTERCLAIM.

Counterclaimants have filed a motion for leave to file its SACC (the "Motion for Leave"). The Motion for Leave was filed on April 23, 2025[7], rendering moot Plaintiff's argument that Counterclaimants have never sought leave to amend. Counterclaimants respectfully incorporate herein their arguments raised in the Motion to Amend.

The intent was to file the Motion for Leave simultaneously with the SACC. Unfortunately, key members of counsel's staff were out of the office the week of filing, which resulted in a lapse in communication and the inadvertent delay to filing the Motion for Leave. Once Plaintiff filed the instant motion to dismiss and challenged the SAC on those grounds, Counterclaimants realized the oversight and immediately filed the Motion for Leave.

It cannot be disputed that this Court holds the inherent discretion to permit a party to amend its claims, and is admonished to grant leave freely in the interest of justice.[8] The 10th Circuit has expressly recognized that the purpose of Rule 15 is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties".[9] Counterclaimants argue that the Counterclaim was properly filed as a matter of right under Rule 15(a)(1)(B). In the event the Court disagrees, Counterclaimants respectfully assert that they have indeed moved the Court for leave to file the SACC and urge the Court to grant that motion.

---

[7] ECF No. 45.
[8] Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321
[9] Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir.1982).

## II. COUNTERCLAIMANTS CAUSES OF ACTION WERE DISMISSED *WITHOUT* PREJUDICE TO REFILING WITH ADDITIONAL FACTUAL SUPPORT.

The Motion to Dismiss attempts to mischaracterize the SACC as an improper "second bite at the apple" as it pertains to the causes of action for breach of contract of the lending agreements, fraudulent inducement, and civil conspiracy. This argument ignores the fact that those claims were clearly dismissed on the facts pled in the ACC, which the Court held were insufficient. The Order of Dismissal explicitly stated that the dismissal was without prejudice to refiling[10], which leaves the door open for refiling with more robust factual support (as Counterclaimants have done).

### A. Breach of Contract Claim (Third Cause of Action).

The Motion to Dismiss argues that Counterclaimants' breach of contract claims have been dismissed as time-barred and cannot be brought again. As stated above, these claims were dismissed without prejudice to refiling with more complete facts. It is precisely the incomplete set of facts pled in the former counterclaim[11] that lead to the Court's conclusion that the statute of limitations had run. The Second Amended Counterclaim contains additional facts which make clear that the limitation period had not run at the time the original counterclaim was filed in this action.

The Court found that the breach of the loan documents occurred on February 28, 2025—the date the second loan disbursement was due and not funded—thus the 6-year period in which

---

[10] Memorandum Decision and Order Granting in Part and Denying in Part Counterclaim Defendants' Motion to Dismiss (ECF No. 42) at page 12.
[11] The former counterclaim was filed before undersigned counsel was retained.

to file claims expired on February 28, 2024. The Dismissal Order noted that the Amended Counterclaim plead that the Counterclaim Defendants first breached the Loan Agreement by not disbursing the second round of funding as agreed on February 28, 2018, but that breach culminated on August 30, 2018, when the third tranche of funding was due.

It is apparent from the Court's reading of the facts that the Amended Counterclaim did not clearly articulate how the default unfolded. As plead in greater detail in the Second Amended Counterclaim, Defendants *did* breach the Loan Agreement *the first time* on February 28, 2018.[12] The SACC includes more specific facts to make clear that the second disbursement of $450,000 was disbursed belatedly, thus curing the breach. Defendants' enduring and uncured breach occurred when they failed altogether to disburse the third and final disbursement on August 30, 2018.

As plead in the SACC, Counterclaimants' claim for breach of the Loan Agreement accrued on August 30, 2018, and the 6-year period in which to bring claims ran on August 30, 2024. Counterclaimants' original counterclaim was filed in this action on May 28, 2024—well within the statute of limitations period—and included two causes of action for breach of contract (first and second causes of action). That pleading was later amended on September 4, 2024 (the ACC) to make clear that Counterclaimants' breach of contract claim was intended to include Defendants' breach of the Loan Agreement. Accordingly, Counterclaimants' breach of contract claims are not time-barred, as more clearly set forth in the SACC.[13]

---

[12] SACC ¶ 19
[13] The clarified breach of contract claims in the ACC relate back to the filing date of the original Counterclaim (May 28, 2024) by operation of Fed.R.Civ.P. 15(c).

### B. Counterclaimants' Fraudulent Inducement and Civil Conspiracy Claims Are Not Barred by the Economic Loss Doctrine.

Counterclaimants' causes of action for Fraudulent Inducement and Civil Conspiracy were dismissed as being duplicative of the contract claims and therefore barred by the economic loss doctrine. The Court reasoned in the dismissal order that the ACC did not adequately allege any misrepresentations made by Counterclaim Defendants that were not represented in the Loan Agreements and were therefore barred by the Doctrine.

For example, in Paragraph 22 of the SACC Counterclaimants add the factual assertion that: "Seare, Black Oak and Lender knew at the time the Loan Documents were executed that Lender could not, or would not, fund the Second or Third Loans on the timetable agreed."[14] Whether or not the Plaintiffs agree with this assertion it is an allegation of misrepresentations by the Counterclaim Defendants that were not represented in the Loan Agreements and that satisfy elements of Fraudulent Inducement and Civil Conspiracy causes of action.

Another example occurs in Paragraph 31 of the SACC where the Counterclaimants included the factual assertion that "As consideration for Fript's continued management and operation of the Paul Evans assets (of which he was no longer the owner), Lender, through Seare, promised that Fript would continue to be paid for the services he rendered, in the amount of $250,000..."[15] The SACC goes on to assert that the Counterclaimants were induced to rely on this and other misrepresentations by the Counterclaim Defendants to their financial detriment.[16]

---

[14] SACC ¶ 22
[15] Id. ¶ 31
[16] Id. ¶¶ 32-35

These misrepresentations are likewise outside of the Loan Agreement and support for the Fraudulent Inducement and Civil Conspiracy causes of action.

In Utah, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law."[17] The Counterclaim alleges that Counterclaimants relied on the independent legal duty each person has to not make affirmative misstatements, not the duties in the Contract.[18] "Misrepresentation may be made either by affirmative statement *or* by material omission, where there exists a duty to speak"[19] The Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth."[20]

Further, Defendants were under an affirmative duty to disclose basic matters related to the Loan Agreement transaction because Defendants knew Counterclaimants were relying on false information—i.e. that Defendants had no intention of completing the funding cycle and aimed to corral Counterclaimants into default and foreclosure of Paul Evans' assets. A party must disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts"[21]

---

[17] KTM Health Care Inc. v. SG Nursing Home LLC, 2018 UT App 152, ¶ 70, 436 P.3d 151 (cleaned up).
[18] *See* Smith v. Frandsen, 2004 UT 55, ¶ 11, 94 P.3d 919; Ennis v. Alder Prot. Holdings, LLC, No. 2:19-CV-00512, 2021 WL 409785, *9 (D. Utah Feb. 5, 2021).
[19] Id.
[20] Ennis, at *9; Basic Inc. v. Levinson, 485 U.S. 224, 240 n. 18 (1988) (noting "the ever-present duty not to mislead") (emphasis added).
[21] First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1330 (Utah 1990) (citing Restatement (Second) of Torts § 551); *see also* Shree Ganesh, LLC v. Weston Logan, Inc., 2021

For example, "a seller who knows that his cattle are infected with tick fever or contagious abortion is not free to unload them on the buyer and take his money, when he knows that the buyer is unaware of the fact, could not easily discover it, would not dream of entering into the bargain if he knew and is relying upon the seller's good faith and common honesty to disclose any such fact if it is true."[22] As in the example, the allegations in the Counterclaim argue that Counterclaimants would never have dreamed of entering into the Loan Agreement if Defendants had told them that Defendants did not intend to complete the course of funding.

Defendants' duties to be forthcoming and tell the whole truth are duties that exist independent from and outside of the contract between the parties. As such, Counterclaimants' fraud-based claims are not precluded by the economic loss doctrine. If the Court is somehow persuaded that the Counterclaim lacks sufficient fact, Counterclaimants respectfully submit that they should be permitted leave to amend the pleading.

### III.  COUNTERCLAIMANTS' R.I.C.O. AND PROMISSORY ESTOPPEL CLAIMS ARE NOT TIME-BARRED.

#### A. The RICO and Promissory-Estoppel Claims Relate Back under Rule 15(c) and Are Timely

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment . . . relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The purpose of the relation-back doctrine is

---

UT 21, ¶ 37, 491 P.3d 885 ("[W]here a person makes an affirmative statement, that person has a common-law duty to disclose all material facts necessary to prevent that statement from being misleading.").

[22] Restatement (Second) of Torts § 551, cmt. l (1977).

8

liberally to allow amendments so long as the opposing party will not be prejudiced by the change."[23]

### 1. The New Claims Arise from the Same Transaction or Occurrence as the Original Counterclaims.

Counterclaimants' original counterclaim—filed March 28, 2024—pleaded at length the "bait-and-switch" scheme by which Defendants (through Seare and Hanson) induced reliance on multi-stage funding they never intended to honor. The RICO claim simply adds a statutory vehicle (18 U.S.C. § 1962) to those same predicate acts of mail and wire fraud, and the promissory-estoppel claim presses an equitable theory of the identical promises and reliance pled throughout the original pleadings. Under Mayle v. Felix, "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims"—not on whether the legal theory or remedy differs.[24] Here the "core of operative facts" is the same fraudulent-inducement scheme alleged in the original Counterclaim, albeit with more in-depth detail.

### 2. Defendants Had Timely Notice of the New Claims.

Because Defendants were on notice of—and already defending against—the factual allegations of misrepresentation, reliance, and damages embodied in the original Counterclaim, they suffer no unfair surprise from the addition of a RICO count or promissory-estoppel count.[25] Likewise, under Tenth Circuit precedent, "prejudice is the touchstone" and is absent here, as

---

[23] Chancellor v. Charter Commc'ns, Inc., 582 F.3d 1306, 1313 (10th Cir. 2009).
[24] 545 U.S. 644, 659–60 (2005).
[25] Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 548–49 (2010) (relation back favored where the party "knew or should have known that the action would have been brought against it").

Defendants' motion itself confirms they have already briefed nearly identical factual issues in defending the ACC.[26]

### 3. The Relation-Back Doctrine Overcomes Any Limitations-Period Bar.

Under Utah law, both RICO (4-year limitations) and promissory-estoppel (4-year limitations) claims ordinarily accrue when the plaintiff "knows or should know of the injury."[27]. In this case, Counterclaimants' claims were tolled until August 21, 2021.

The complained-of "bait-and-switch" scheme could not have been discovered until the parties executed the Surrender Agreement on August 21, 2021, when Counterclaimants first learned that Defendants never intended to fund the promised tranches and had in fact engineered a foreclosure. Utah courts routinely toll limitations where the claimant could not, despite reasonable diligence, discover the injury.[28] Accordingly, the limitations period did not begin to run until August 21, 2021.

Counterclaimants filed their original Counterclaim on May 28, 2024—well within three years of accrual and thus timely as to both RICO and promissory-estoppel claims. Federal Rule 15(c)(1)(B) provides that amendments "relate back" to the date of the original pleading if they "arise out of the conduct, transaction, or occurrence set out" therein. The RICO and promissory-estoppel claims rest on the very same "transaction or occurrence" (the fraudulent-inducement scheme) detailed in the original Counterclaim.[29] Because the May 28, 2024 filing was timely,

---

[26] *See* Chancellor, 582 F.3d at 1313–14.
[27] Agency Holding Corp. v. Malley–Duff & Assocs., 483 U.S. 143, 156 (1987); U.C.A. § 78B-2-307.
[28] *See* Rawson v. Mathews, 212 P.3d 752, 756–57 (Utah 2009) (applying equitable tolling where fraud was inherently undiscoverable); *see also* Equilon Enters. v. Ford Motor Co., 2010 UT 44, ¶ 37 (same).
[29] Mayle v. Felix, 545 U.S. 644, 659–60 (2005).

and because Defendants had full notice of the operative facts, the SACC's RICO and promissory estoppel causes of action relate back and cannot be barred by any statute of limitations.

### IV. Counterclaimants' RICO Claim Pleads Mail and Wire Fraud with the Required Particularity.

Because RICO incorporates mail- and wire-fraud as predicate acts, those allegations must be pleaded "with particularity," specifying "the who, what, when, where, and how" of each fraudulent scheme.[30] Contrary to the argument in the Motion to Dismiss, the SACC details each predicate act with sufficient particularity to satisfy Rule 9 and defeat the motion to dismiss.[31]

Who: The RICO "enterprise" is the four Counterclaim Defendants—Black Oak Capital BOCA, LLC; Gregory Seare; Kurt Hanson; and bocm3-Paul Evans-Senior Debt, LLC—acting in concert. SACC ¶47 expressly identifies these four as members of the same corrupt enterprise.

What: The SACC alleges that, in or about December 2017, Defendants "lured Counterclaimants into a loan agreement they never intended to fully fund per the timeline agreed in the security agreement," promising three discrete tranches totaling $3,250,000 (¶48) and then willfully withholding the second ($450,000) and third ($1,050,000) disbursements (¶49).

When: The precise dates of the promised disbursements—December 21, 2017; February 28, 2018; and August 30, 2018—are pled in SACC ¶103 and incorporated into the RICO count (see ¶48). And the SACC alleges that the second tranche "came and went" on February 28, 2018 with only a belated partial loan, and that the third tranche was never funded at all (¶19).

---

[30] U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah, 472 F.3d 702, 726–27 (10th Cir. 2006); Gaddy v. Corp. of President of LDS, 665 F. Supp. 3d 1263, 1281 (D. Utah 2023).
[31] Id.

Where: Defendants carried out their scheme through "email, telephone, and other electronic means," i.e., wire communications, each of which constitutes a separate RICO predicate act (SACC ¶50).

How:

a. Written Communications: For example, the SACC specifies that, on August 29, 2022, Seare "announced via email" that Black Oak Capital Partners was winding down and no further distributions would be made (¶35).

b. Oral Exchanges: It further recounts that Hanson "confirmed Seare's disappearance in a message" in September 2022 and communicated by telephone and email about the portfolio's dismantling (¶36–38).

c. Overt Acts: Outright refusal to answer Fript's inquiries regarding his management authority (¶42–44), and the deliberate transfer of Paul Evans's assets to affiliates to frustrate recovery (¶45) also manifest the enterprise's coordinated misconduct.

Resulting Harm: As a direct result of this scheme, Counterclaimants defaulted, signed the Voluntary Surrender Agreement on August 25, 2021, and suffered foreclosure and below-market asset seizures, with damages exceeding $500,000 (¶53).

Accordingly, the SACC is sufficiently pled, and the Motion to Dismiss should be denied.

V. **Substantive Preemption Does Not Bar Counterclaimants' Promissory-Estoppel Claim.**

Under Utah's economic-loss doctrine, equitable remedies generally give way where a valid written contract governs the very promise at issue. As the Utah Supreme Court explained in

Mann v. American Western Life Insurance Co., "[r]ecovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation."[32] But Utah law also recognizes a critical exception: when an oral promise is truly collateral to—and not inconsistent with—the written agreement, promissory estoppel remains available to prevent injustice.[33]

Here, the SACC describes a series of unequivocal, post- foreclosure assurances by Lender—through its principals Gregory Seare and Kurt Hanson—that lie entirely outside the four corners of any written contracts between the parties. The written Loan Documents set forth interest rates, collateral descriptions, and disbursement mechanics, but are conspicuously silent on any promise to continue paying Fript $250,000 per year for management services once the assets were surrendered. According to the SACC, it was precisely this oral commitment—vowed after the foreclosure closing on August 21, 2021—that induced Fript to remain on as manager, forego other employment opportunities, and incur ongoing operational expenses in reliance on Lender's word.

Utah's collateral-promise exception applies squarely to these facts. In Ward, the court upheld a promissory-estoppel claim where a seller's side agreement imposed "additional obligations" beyond the written sales contract.[34] And in Ashby, promissory estoppel survived because the oral assurances at issue did not duplicate or conflict with a signed partnership agreement.[35] Just so here, enforcing an oral promise to pay management fees does not rewrite or

---

[32] 586 P.2d 461, 465 (Utah 1978).
[33] See Ward v. McGarry, 2022 UT App 62, ¶ 15; Ashby v. Ashby, 2010 UT 7, ¶ 14.
[34] 2022 UT App 62, ¶ 15.
[35] 2010 UT 7, ¶ 14.

undermine the enforceable credit terms lying in the Loan Documents. Instead, it fills a gap they plainly leave unaddressed.

Moreover, recognizing this collateral promise does no violence to the parties' contractual allocations. The Loan Agreement remains the exclusive source for claims arising under its terms. By contrast, this equitable claim addresses only the separate bargain—the $250,000-per-year promise—that Lender never memorialized in writing. There is no risk of double recovery, because any breach-of-contract remedies will pursue rights under the Loan Documents, while the promissory-estoppel claim vindicates reliance on an independent oral undertaking .

Finally, Utah courts underscored in <u>Mile High Industries v. Cohen</u>[36] that promissory estoppel exists "to prevent injustice" when one party reasonably relies on another's clear promise to its detriment. Here, Fript dedicated years of effort and capital, maintaining the business operations through foreclosure challenges—actions he would not have undertaken absent Lender's assurance of ongoing compensation. To deny him relief would let Lender profit from its unkept word and leave Fript uncompensated for services rendered in reliance on that promise.

For all these reasons, Utah's substantive preclusion principles do not bar – but rather compel the survival of – Counterclaimants' promissory-estoppel claim. The promise at issue is collateral to the written agreements, the collateral-promise exception applies, and equity demands enforcement to avoid manifest injustice. Accordingly, Defendants' Motion to Dismiss should be denied.

## CONCLUSION

---

[36] 222 F.3d 845, 859 (10th Cir. 2000).

The only facts that matter in considering a motion to dismiss pursuant to Utah Rule 12(b)(6) are those plead in the SACC. Accordingly, the recitation of facts in the Motion to Dismiss is properly ignored. In considering a motion to dismiss, the Court should accept the factual allegations of the SACC as true, and construe them in the light most favorable to Counterclaimants.

When viewed through that lens, the SACC sets forth sufficient facts to put Defendants on notice as to the general nature of Counterclaimants' claims, and meets the elements of each of the causes of action. If the Court is somehow persuaded that more factual support is needed, Counterclaimants respectfully ask the Court for leave to amend the SACC.

DATED this 23rd day of May, 2025.

FORD & CRANE PLLC

/s/ Matthew B. Crane
Matthew B. Crane (UTB# 31909)
*Attorney for Defendants Evan Fript and Paul Evans, LLC*

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that on the 22nd day of May, 2025, I caused a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM to be filed with the Court electronically via Greenfiling, which caused notice to be served upon all parties through their e-filing counsel of record via the Court's Notice of Electronic Filing [NEF].

/s/ Matthew B. Crane